IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DUSTIN CHAMBERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24CV562 |
| | ) | |
| LIEUTENANT MR. COUZZI, | ) | |
| CORPORAL MR. T. KLUK, | ) | |
| SERGEANT MR. RODGERS, and | ) | |
| NURSE MS. JO, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER, MEMORANDUM OPINION, AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Dustin Chambers' cellmate at Rockingham County Jail had a medical emergency on May 1, 2024, and Chambers called for help. When officers responded to the cell, Lieutenant Mr. Couzzi, Corporal Mr. T. Kluk, and Sergeant Mr. Rodgers allegedly used excessive force against Chambers, and "Nurse Ms. Jo" was allegedly deliberately indifferent to the injuries he sustained. Chambers brings this action against the defendants pursuant to 42 U.S.C. § 1983 for violating his Eighth Amendment rights.

This matter is now before the Court on Joanna Peach's motion for summary judgment, Docket Entry 35, and her co-defendants' ("the Officers'") motion for summary judgment, Docket Entry 39. Chambers did not respond to either motion, failing to

present evidence of his claims. Accordingly, the defendants are entitled to judgment as a matter of law. The Court should grant their motions for summary judgment.

Peach also moved to seal portions of her brief and affidavit in support of her motion for summary judgment, as well as all of Exhibit 1 to her affidavit, which contain excerpts of Chambers' medical records. Docket Entry 38. Because the public's First Amendment right of access outweighs Chambers' privacy interest, the motion to seal is denied.

I.     FAILURE TO RESPOND

Upon the defendants' filing of their respective motions for summary judgment, on October 9, 2025, the Clerk of Court mailed Chambers the

standard Roseboro letter informing him of the motions and his right to respond. The letter warned Chambers that if he failed to respond to the motions, the Court may "conclude that the defendant(s)' contentions are undisputed and/or that you no longer wish to pursue the matter" and grant judgment in favor of the defendants. Docket Entry 41. *See also* M.D.N.C. Civ. L.R. 7.3(k) ("If no response brief is filed within the time required by this rule, the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice."). Despite the Court's warning, Chambers has not responded to either motion,[1] nor did he verify the factual allegations in his Complaint, *see* Docket Entry 2, such that they could be considered as more than mere allegations, *see Gowen v. Winfield*, 130 F.4th 162, 175-76 (4th Cir. 2025).

Nevertheless, the Court cannot summarily grant the defendants' motions because Chambers' failure to respond "does not fulfill the burdens imposed on moving parties by Rule 56 [of the Federal Rules of Civil Procedure]." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).

"Rule 56 requires that the moving party establish, in addition to the absence of a dispute over any material fact, that it is 'entitled to a judgment as a matter of law.'" *Id.* Thus,

although Chambers' failure to respond may leave the defendants' facts uncontroverted, they "must still show that the uncontroverted facts entitle [them] to 'a judgment as a matter of law.'" *Id. See also Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55-56 (4th Cir. 1994) (noting that, even in the absence of a response, "the court should look at the movant's own papers . . . [and] determine if the record of filed depositions, answers to interrogatories, admissions, and affidavits[] demonstrates that a genuine issue exists as to any material fact").

The uncontroverted facts do show just that, as set forth in further detail below.

## II.    FACTS

On May 1, 2024, Chambers was an inmate at the Rockingham County Detention Center ("Jail") when, at approximately 7:20 a.m., his cellmate suffered a medical emergency. Windell Brown Aff. ¶¶ 2, 3, Docket Entry 32-1. Someone in Chambers' cell pressed the intercom, and Officers Couzzi, Rodgers, and Kluk, among others, others responded. *Id.* ¶ 4.

When officers arrived, "Chambers exited his cell in an aggressive manner and confronted the responding officers." *Id.* ¶ 5. They told him to move aside so his cellmate could receive medical attention. *Id.* But Chambers began arguing "so he was

---

[1] There is also no entry on the docket of the Roseboro letter being returned as

undeliverable. Therefore, it is presumed that Chambers received it.

Case 1:24-cv-00562-TDS-JGM    Document 42    Filed 07/23/26    Page 2 of 11

placed on the floor and restrained and handcuffed." *Id.* Officers then moved him from the area to booking where he stayed for the remainder of the medical emergency response. *Id.* ¶ 6. Chambers had no obvious injuries and did not complain of any neck or back pain at the time. *Id.* ¶ 8. None of the detention officers took him to the medical unit to be evaluated after the incident. Joanna Peach Aff. ¶ 10 (Sept. 10, 2025), Docket Entry 37-1.

At the time of the incident, Joanna Peach (Nurse Jo) was a licensed practical nurse employed with Southern Health Partners, Inc. which contracted with the Jail to provide nursing care to inmates. *Id.* ¶¶ 2, 3. There was one nurse on-site at the Jail 14 hours a day, seven days a week. *Id.* ¶ 4. An off-site on-call registered nurse was available 24 hours a day, seven days a week. *Id.*

On May 2, Peach saw Chambers in response to an April 30 Sick Call request. *Id.* ¶ 12 (citing Ex. 1 at 12, 14, 19). During the examination, Chambers did not mention the May 1 altercation, and Peach did not otherwise know of Chambers' Sick Call request related to the May 1 altercation. *Id.* ¶ 13 (citing Ex. 1 at 16).

On May 3, Peach saw Chambers for the May 1 Sick Call request. *Id.* ¶ 16 (citing Ex. 1 at 15-16). She recorded his vital signs, his complaint that he could not move his neck in either direction, and his pain rating of a 7 out of 10. *Id.* (citing Ex. 1 at 15-16). She also noted no bruising or visible injury and no limited rotation of movement. *Id.* (citing Ex. 1 at 16).

As a result of the Sick Call visit, Peach placed Chambers on the list for the doctor to see next time he was at the Jail. *Id.* ¶ 17 (citing Ex. 1 at 16). The one doctor contracted to provide services at the Jail generally went there once a week to review charts and evaluate patients, although he was available 24 hours a day for consultation and to make verbal orders for patients. *Id.* ¶ 5.

Nursing staff, including Peach, could not independently make medical decisions for inmates, nor could they unilaterally order prescriptions for any inmate. *Id.* ¶ 7.

On May 9, Chambers submitted a Sick Call request following up on the May 1 incident. *Id.* ¶ 19 (citing Ex. 1 at 21). In it, he complained that he could not turn his neck and could not bend over. *Id.* (citing Ex. 1 at 21). He asked why it was taking so long for a doctor to see "someone in pain" for "something that[']s an emergency." *Id.* (citing Ex. 1 at 21). Peach responded to the Sick Call request and let Chambers know that he was on the list for the doctor to see and he was already receiving pain medication. *Id.* (citing Ex. 1 at 21).

Due to a personal emergency, the doctor could not go to the Jail until May 11. *Id.* ¶ 22 (citing Ex. 1 at 12). That day, he examined Chambers who complained of stiffness, pain, and a decreased rotation of movement in his neck. *Id.* ¶ 23 (citing Ex. 1 at 12).

3

The doctor prescribed Chambers with another pain medication, muscle reliever, and a hot pack. *Id.* (citing Ex. 1 at 3, 12).

Approximately one month later, on June 13, Chambers submitted his next Sick Call request, this time reporting slight pains shooting down from his neck to his spine. *Id.* ¶ 25 (citing Ex. 1 at 22). Peach placed him on the sick call list for the doctor to see. *Id.*

In the meantime, Peach saw Chambers on June 18. *Id.* ¶ 27. He complained that his pain had continued since May 1 and was currently at a 6 out of 10. *Id.* (citing Ex. 1 at 17-18). The doctor prescribed him additional pain medicine. *Id.* (citing Ex. 1 at 4, 7, 18).

When the doctor saw Chambers on June 30, he noted that Chambers' cervical pain had improved but he still had neck pain radiating to his back. *Id.* ¶ 28 (citing Ex. 1 at 12). The doctor discontinued the medication and ordered a corticosteroid sequence and an x-ray of Chambers' cervical spine. *Id.* (citing Ex. 1 at 4, 9, 28).

On July 2, Chambers received the x-ray which revealed that his cervical spine was normal. *Id.* ¶ 29 (citing Ex. 1 at 10-11). The doctor did not order any further treatment. *Id.* ¶ 30 (citing Ex. 1 at 4, 9).

Chambers was transferred out of the Jail on or about October 23, 2024. *Id.* ¶ 36.

### III.   STANDARD OF REVIEW

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In analyzing a summary judgment motion, courts "must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *Bandy v. City of Salem*, 59 F.4th 705, 709 (4th Cir. 2023).

The moving party bears the burden of establishing the absence of a genuine dispute of material fact by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Rule 56).

"Where, as here, the nonmoving party bears the ultimate burden of proof at trial, the moving party may discharge its initial burden at summary judgment by 'showing – that is, pointing out to the . . . court – that there is an absence of evidence to support the nonmoving party's case.'" *Anderson v. Diamondback Inv. Grp., LLC*, 117 F.4th 165, 174 (4th Cir. 2024)

4

(quoting *Celotex Corp.*, 477 U.S. at 325). "If the moving party carries this initial burden, the burden then shifts to the nonmoving party, who must 'go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324).

A party cannot rely on statements in a brief to support a motion for summary judgment, because they are not evidence. *City of Greensboro v. Guilford Cnty. Bd. of Elections*, No. 15-CV-559, 2017 WL 11488724, at *1 n.4 (M.D.N.C. Jan. 26, 2017) (collecting cases); *see also Hill v. Carvana, LLC*, No. 22-CV-37, 2022 WL 1625020, at *3 (M.D.N.C. May 23, 2022).

IV.   ANALYSIS

Title 42, United States Code, Section 1983 "is a federal statutory remedy available to those deprived of rights secured to them by the Constitution and, in a more sharply limited way, the statutory laws of the United States" by persons acting under color of state law. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). A plaintiff bringing suit pursuant to Section 1983 must show that a person acting under color of state law violated a Constitutional or other federal legal right. *West v. Atkins*, 487 U.S. 42, 48 (1988).

> A. The Court should grant the Officers' motion for summary judgment.

Chambers alleges that Couzzi, Kluk, and Rodgers used excessive force when he was exiting his cell to allow access to his cellmate who needed medical assistance. Specifically, he contends that Couzzi and Kluk slammed him to the ground for no reason and Rodgers placed his knee and weight on Chambers' neck. As a result, he sustained neck and back injuries.

An inmate's right to be free from the use of excessive force derives from the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986); *see also Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) ("The Eighth Amendment . . . serves as the primary source of substantive protection to convicted prisoners in cases . . . where the deliberate use of force [by prison officials] is challenged as excessive and unjustified.").

A claim for the use of excessive force "involves both an objective and a subjective component." *Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021). "The objective component measures the nature of the force employed, asking whether that force 'was sufficiently serious to establish a cause of action.'" *Id.* (quoting *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019)). "This is not a high bar; de minimis or trivial force is not enough,

5

but anything more will suffice." *Id.* (citing *Brooks*, 924 F.3d at 112).

"The more demanding . . . subjective component . . . asks a single question: whether the officers acted with a 'sufficiently culpable state of mind,'" *id.* (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)), that is, "wantonness in the infliction of pain," *id.* The plaintiff must establish that the officer applied force "maliciously and sadistically for the very purpose of causing harm" rather than "in a good-faith effort to maintain or restore discipline." *Dean*, 984 F.3d at 302.

For example, an officer acts in good faith when confronting "immediate risks to physical safety" and "compelling compliance with prison rules and procedures" to "preserve internal order." *Brooks*, 924 F.3d at 113 (citing *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)).

The United States Supreme Court recognized long ago that "corrections officials must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" *Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 320). They "must balance the need 'to maintain or restore discipline' through force against the risk of injury to inmates." *Id.* Accordingly, "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to

maintain institutional security.'" *Id.* (quoting *Whitley*, 475 U.S. at 321-22).

But an officer crosses the line and acts maliciously and sadistically, for example, "when [he] inflict[s] pain . . . to punish an inmate for intransigence or to retaliate for insubordination," *Brooks*, 924 F.3d at 113-14, n.4 (citing cases finding a reasonable jury could infer the officer used excessive force in response to the inmate's use of profanity and threats of violence and other similar statements directed at officers), or "to punish or retaliate against an inmate for his prior conduct," *Dean*, 984 F.3d at 302, and possibly when the officer "use[s] force on an inmate who is restrained and compliant and posing no physical threat," *id.* (noting this conduct "raises the specter of such an impermissible motive").

"[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7).

To determine the nature of the force, courts assess "[1] the need for application of force, [2] the relationship between that need and the amount of force used, [3] the threat 'reasonably perceived by the responsible officials,' and [4] 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503

6

U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

"If a reasonable jury could find, based on the inferences drawn under the *Whitley* factors or other evidence, that correctional officers used force maliciously to punish or retaliate against an inmate, then summary judgment [in favor of the officers] is not appropriate." *Dean*, 984 F.3d at 303-02.

Here, the only evidence before the Court shows that Chambers was aggressive and confrontational towards the officers who responded to assist his cellmate. When officers told him to move aside, he began to argue, at which time "he was placed on the floor and restrained and handcuffed." There is no evidence that anyone placed a knee or any weight on Chambers' neck.

Once handcuffed, Chambers then waited in booking until the emergency ended. At the time, he did not complain of any neck or back pain and had no obvious injuries.

Two days later, Peach assessed Chambers for reported pain in his neck and back and administered medications as the doctor ordered. Ultimately, an x-ray of his cervical spine showed normal results, and the

doctor did not order any further treatment.

The law permits officers to use means to maintain order and discipline. The force used here – placing Chambers on the floor to handcuff him – was in response to Chambers' aggressive, confrontational, and argumentative behavior when officers and medical personnel needed to access his cell. Balancing the *Whitley* factors, the nature of this force was not excessive. And the evidence does not show that any of the officers acted maliciously or sadistically.

Chambers, who has the burden at trial of proving these officers used excessive force, did not respond or otherwise provide evidence to the contrary. In sum, he has failed to proffer evidence of the essential elements of his excessive force claim.

Because there is no evidence that any of the officers violated Chambers' constitutional right to be free from the use of excessive force, they are entitled to qualified immunity. *See, e.g.*, *Nazario v. Gutierrez*, 103 F.4th 213, 230 (4th Cir. 2024) ("[A] court may award qualified immunity to an official if either (1) there is no violation of a constitutional right, or (2) the constitutional right was not clearly established.").

Therefore, the Court should grant the Officers' motion for summary judgment.[2]

---

[2] In their brief, the Officers conclude that "summary judgment should be granted

to Officers Brown, Stultz, Couzzi, Kluk, and Rodgers." Defs. Couzzi, Kluk and

7

B. The Court should grant Peach's motion for summary judgment.

Chambers alleges that Peach was deliberately indifferent to his serious medical needs.

The Fourth Circuit Court of Appeals has long held that an inmate is due "reasonable medical treatment." *See Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977). "Claims that prison officials failed to provide adequate medical care to an inmate, like excessive force claims, sound in the Eighth Amendment." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). A plaintiff must show that the officer "acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

An officer acts with deliberate indifference when he has "*actual knowledge of the risk of harm* to the inmate" and also "'recognize[s] that *his actions were insufficient*' to mitigate the risk of harm to the inmate arising from his medical needs." *Id.* (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)).

Prison officials may act with deliberate indifference by "intentionally denying or delaying access to medical care . . . ." *Estelle*, 429 U.S. at 105. But "[m]ere delay is not enough." *Moskos v. Hardee*, 24 F.4th 289, 298 (4th Cir. 2022). "A commonplace medical delay such as that experienced in everyday life will only rarely suffice to constitute an Eighth Amendment violation, absent unusual circumstances where the delay itself places the prisoner at 'substantial risk of serious harm,' such as where the prisoner's condition deteriorates markedly or the ailment is of an urgent nature." *Id.*

An inmate's disagreement with medical staff about his treatment is insufficient absent exceptional circumstances. *See Hixson v. Moran*, 1 F.4th 297, 302-03 (4th Cir. 2021) (citing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6

---

Rodgers' Mem. in Supp. of Mot. for Summ. J. at 8, Docket Entry 40 ("Officers' Mem."). But the Court dismissed all claims against Brown and Stultz in its August 9, 2024 Order, Docket Entry 5. Similarly, the Officers argue that they are entitled to summary judgment on claims of deliberate

indifference and conditions of confinement. *See* Officers' Mem. at 11-15. In its August 9, 2024 Order, the Court only permitted the excessive force claim to proceed against the Officers, while the deliberate indifference to serious medical needs claim could proceed against Nurse Jo.

(3rd Cir. 1970) (noting that exceptional circumstances are those in which medical care is "so grossly incompetent, inadequate or excessive as to shock the general conscience or to be intolerable to fundamental fairness"))); *see also Bowring*, 551 F.2d at 47-48 ("The right to treatment is, of course, limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable."); *Moorehead v. Stover*, No. 5:13-CT-3144-F, 2016 WL 8667807, at *3 (E.D.N.C. Aug. 23, 2016), *aff'd*, 671 F. App'x 221 (granting summary judgment where the "claims essentially amount to a disagreement in the course of treatment prescribed by Defendant").

Here, the undisputed evidence shows that Peach provided Chambers with adequate medical treatment for his alleged injuries. When she assessed him on May 2 for an unrelated earlier Sick Call request, he did not mention the May 1 incident, and she did not otherwise know about it. After learning of his related Sick Call request, she saw him on May 3, noted his complaints of neck and back pain, and placed him on the list to see the doctor. Although Chambers complained of the delay in seeing the doctor, there is no evidence that Peach intentionally delayed

Chambers access to treatment. The delay was due to unforeseen personal circumstances of the doctor who was on-site on May 11 and evaluated Chambers. When Chambers later returned to see Peach with continued complaints of pain, she once again placed him on the list to see the doctor who ordered a cervical x-ray, the results of which were normal. Thus, there is no evidence that any delay, assuming Peach were somehow responsible for it, placed Chambers at substantial risk of harm or caused his condition to deteriorate noticeably.

As above, Chambers did not respond or otherwise provide evidence to the contrary. He has failed to proffer evidence of the essential elements of his deliberate indifference claim against Peach.

Because there is no evidence that Peach violated Chambers' constitutional right to receive adequate medical treatment, she is entitled to qualified immunity. *See, e.g., Nazario*, 103 F.4th at 230 ("[A] court may award qualified immunity to an official if either (1) there is no violation of a constitutional right, or (2) the constitutional right was not clearly established.").

Therefore, the Court should grant Peach's motion for summary judgment.[3]

---

[3] Although Peach includes in her brief an argument that the Court should also grant summary judgment in her favor on the official capacity claim, the Court

dismissed the official capacity claim against her in its August 9, 2024 Order, Docket Entry 5.

## V. SEALING STANDARD

Peach also moves to seal portions of her summary judgment brief and supporting affidavit, and the entirety of the accompanying exhibit, which contain excerpts from Chambers' medical records. In support of her motion, she merely relies on the Court's express authority to seal materials pursuant to Local Rule 5.4 and requests that they be sealed "so that the parties may present them to the Court without violating applicable North Carolina or federal statutes concerning the confidentiality of medical records, such as the Health Insurance Portability and Accountability Act Privacy Rule, 45 CFR Part 160 and 164." Mot. to Seal ¶¶ 4, 5.

This argument does not address the legal standards that govern the public's right of access to documents, especially those upon which the Court relies when ruling on a motion for summary judgment.

The public has a First Amendment of access to these judicial records. *See, e.g.*, *Doe v. Pub. Citizen*, 749 F.3d 246, 267 (4th Cir. 2014). Therefore, Peach "must show a compelling governmental interest or other higher value to justify sealing, and the limitation on public access must be narrowly tailored to serve that interest." *Musgrove v. Moore*, No. 1:19-CV-164, 2022 WL 19977408, at *1 (M.D.N.C. Apr. 20, 2022) (denying the defendants' motion to seal medical records in a § 1983 case

involving claims of inadequate medical treatment) (citing *Press-Enter. Co. v. Superior Ct.*, 464 U.S. 501, 510 (1984); *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)).

As did the defendants in *Musgrove*, Peach refers to state and federal statutes and regulations governing confidentiality, but "[t]he Court does not understand [Peach] to say that these statutes and regulations prohibit courts from making such records available on the court docket. Rather, reading between the lines, it appears [she is] saying that [she is] required to keep such records confidential pursuant to state and federal laws and regulations. But that does not establish that any law prohibits or restricts disclosure of such records by courts when the records are filed and used in pending cases." *Id.* at *2.

Nevertheless, "the Court will still weigh the public's right of access against the defendants' interest in sealing." *Id.* Like the *Musgrove* defendants, Peach has "not addressed the public's interest in access at all, much less explained why it is outweighed by a governmental interest in secrecy." *Id.*

"While the Court recognizes that medical records are ordinarily kept confidential, that is not always the case when those records are important to a lawsuit the patient himself has brought." *Id.*

Although Peach filed her motion to seal on October 8, 2025, Chambers has not joined the motion. *See generally* Docket. Furthermore, in his complaint, Chambers described his alleged injuries, statements about his medical condition that he made to Peach, and care he received from the doctor. *See* Statement of Claim, Compl. The Court discerns no interest here that outweighs the public's right of access to these materials.

Accordingly, Peach's motion to seal is denied.

## VI.  CONCLUSION

**IT IS HEREBY ORDERED** that Joanna Peach's motion to seal is **DENIED**;

**IT IS FURTHER ORDERED** that Joanna Peach refile Docket Entries 37, 37-1, and 37-2 as publicly accessible documents that also comply with Federal Rule of Civil Procedure 5.2;

**IT IS HEREBY RECOMMENDED** that the Court **GRANT** Defendants Couzzi, Kluk, and Rodgers' motion for summary judgment and dismiss the claim against them with prejudice; and

**IT IS FURTHER RECOMMENDED** that the Court **GRANT** Defendant Joanna Peach's motion for summary judgment and dismiss the claim against her with prejudice.

JoAnna Gibson McFadden
United States Magistrate Judge

July 23, 2026

11